ROANE, Judge.
The present appellee had obtained an attachment against the goods of Clark, an absconding debtor: It had been levied by the appellant, the Sergeant of the city of Richmond, on divers goods of Clark, including a negro woman named Fanny. The next day, an account for rent was put into his hands to distrain for, by William Marshall, and the same officer returned, that he considered this distress levied upon the same property. There was also an attachment in favor of Gallego, which he also considered as the third levied upon this property.
When the appellee’s attachment came on to be tried, it was about to be contested by William Marshall, on the ground of the superior dignity of his claim, and of some alleged defect in the bond or attachment. This intention being known to the appel-lée, he, of his own motion, applied to Marshall to desist therefrom, and a compromise then took place, according to which the judgment 'was rendered. That compromise was, that Marshall’s claim should be first paid, and the appellee come in for the residue. This compromise admits, as between the now parties, the legality of the claim for rent, and the liability of the goods to satisfy the same. The judgment of the Hustings Court is in favor of the appellee for his debt; orders a sale of the attached effects; but directs a postponement of the appellee’s claim to that of *Marshall. It is now a question, whether this judgment, as between the now parties, is hot valid? I consider it not as relating to Gallego, or any 'others than the parties before us.
In general cases, the judgment of the Court of Law would have ended with the order for sale of the attached effects: but, here Was a dispute concerning the property. The parties had a right to interplead for the purpose of settling the right. The compromise exhibits the event of such in-terpleader; and the direction of the Court respecting the application of the proceeds is certainly justified by thé agreement of the parties. I consider that part of the judgment which d'rects the application (in connexion with the testimony in this cause) as a memorandum of the agreement between the parties to that effect. It cannot be doubted, that the appellant was competent to make such an agreement. A party litigant in a Court of Justice may yield every thing to his adversary: it is a sufficient consideration, that he puts an end to the law suit. But here, by this compromise, he probably expedited his recovery. As to the slave Fanny, he only yielded what Marshall might probably have established his right to, by further and other testimony ; and he had liberty to come in upon the surplus; a fund, which he then probably thought amply sufficient to satisfy his claim : If he is disappointed in the event, it is not a reason to set aside the compromise.
This view of the case equally holds, whether the proceedings in the attachment were regular and legal, or not. The judgment given by the Hustings Court is in force and unreversed. It is not for us, (as a Court of Equity,) to correct, or reverse, that judgment; but, if it were, the bond stated by the Clerk to have beén filed in the attachment, seems unobjectionable; and this outweighs the loose testimony re *566 lating- to an alleged defect originally existing therein.
*There is some ambiguity, whether the slave Fanny was sold to pay the appellee’s debt, or the rent. That, however, is immaterial, as both those claims coalesced in the judgment; and under that judgment the sale was made.
The judgment, then, upon an inter-pleader between the now parties,' upon a compromise relating to the disposition of the attached effects, fully settles the question relative to the slave Fanny. As to her (as well as the other effects) the appellee has renounced the claim he now sets up. The question of law, at present stirred, has been settled by the agreement of the parties; and the judgment of the Hustings Court established upon the best of all foundations. The agreement of the parties must not, as- between them, be disturbed. If that question of the law was now open, however it might be in the extreme case put by Mr. Randolph, I should probably be of opinion, that there are no data in this case, in relation to the place or circumstances of seizure, to authorise us to depart from the imperious words of the statute.
I am of opinion, that the decree ought to be reversed, and the injunction dissolved.
FLEMING, Judge.
The controversy in this case has arisen from the Sergeant’s having neglected to mention, in his return to the attachment, that the negro was taken off the demised premises; for, if that had been stated, the law would have considered that the distress for the rent could only have been made upon the premises, and consequently that the attachment was to be preferred. This, then, appearing in the Court of Equity, the preference must prevail, unless the agreement with Marshall alters the case. It does not, however; 1. Because there was no consideration: For the alleged defect in the attachment bond is not proved; and, if it was,' still it appears to me that such a bond, made payable to the Magistrate who took it, might be sustained, as the Magistrate would be a trustee for the debtor. 2. Because Gallego’s *assent was as necessary as that of Leeds; because that also must have been considered as executed upon property found off of the premises; and, therefore, not liable to be distrained: So that, either way, Marshall was not entitled; and of course, the agreement being altogether without consideration, is not binding on him, especially as it is not entered of record. If the landlord attempts to avail himself of the priority allowed by the statute, he must bring himself strictly within the terms of it: For, he has no equity over any other creditor, independent of the act of Assembly. Upon the whole, I am for affirming the decree.
CARRINGTON, Judge.
The whole nature of the transactions being disclosed by the proceedings in equity, and it clearly appearing that the slave was taken off the demised premises, the first question that occurs is, Whether she could- be distrained for rent, unless actually found upon the leased lands? And the law is clear, that she could not; for, distress can only be made upon the demised premises, and not elsewhere. The privilege is local, and does not extend to anjr other place; whereas, the attachment may be executed on- the property, if'found any where within the county. The next question then is, Whether the compromise between Leeds and Marshall affects the case? And I think it does not: 1. Because Gallego was not consulted; and even he had a better right than Marshall. 2. Because the alleged defect in the attachment bond is not 'proved. The agreement was, therefore, totally with consideration ; and, consequently, void. The objection to the jurisdiction of the Court of Chancery cannot be supported; because, the truth of the case was not before the Court of Law; and the essential fact, that the slave was taken off the premises, never was disclosed, until it appeared in the Chancery proceedings. Of course, I think the decree ought to be affirmed.
LYONS, Judge.
The slave was not upon the premises, at the time when the attachment was served; and, therefore, was not liable to be-distrained for *the rent; for, distress can only be made upon the land. This is proved by the 9th section of the act, [R. C. c. 113, § 17, ed. 1819,] which gives the landlord power to seize the tenant’s property carried off the premises, within ten days after the removal: A provision, which would have been entirely useless, if he could have distrained.
It was said, however, that it will be hard upon the landlord, if he is to lose his remedy, merely because the property happens to be off the land at the time the distress is to be made. But the answer is, that he has the same remedies in that case that other citizens have; and, in addition thereto, he has the power of seizure within the ten days; and may, moreover, distrain the property of other people found upon the premises: advantages, which abundantly compensate the supposed hardship.
It being clear, then, that the slave could not have been distrained, as she was not found upon the premises, the priority of Leeds, whose attachment had been legally served, could not have been disputed, (for, the pretence that the bond was insufficient, has no weight, as no defect is shewn ;) and, therefore, he was, really, entitled to have had the property sold to satisfy his claim, unless the agreement with Marshall altered the case.
But, I do not think that that circumstance affects him. 1. Because the Sergeant had not returned the nature of the case, so that Leeds was ignorant of the state of facts; and, therefore, contracted under a delusion. 2. Because there was no consideration for the agreement; for, as Marshall could have taken no steps which would have disappointed the attachment, he gave up nothing; and Leeds, on the other hand, received no benefit, by the transaction. It was, therefore, a bargain without consideration, and, consequently, not obligatory on Leeds; who, having a complete right, could not lose it, without some consideration.
*It was said, however, that it was a question of law; and, therefore, that the Court of Chancery had no jurisdiction. But that is not correct; for, as aL *567 ready ,observed, the Sergeant having neglected to return the truth of the case, the facts were unknown to Leeds at the time of the trial at law; and, therefore, he could not have availed himself of them there: Which was a sufficient foundation for his coming into Equity. I concur, therefore, that the decree should be affirmed.